## CHARITON COUNTY.

*(Circuit Court, W. D. Missouri.   November, 1880.)*

MUNICIPAL BONDS—RIGHTS OF BONA FIDE HOLDER.

> Where the charter of a railroad company granted to it the privilege to obtain county subscription to its stock, and the defendant county subscribed for stock in the company, and issued bonds under the authority conferred by the charter of the company, such bonds are valid in the hands of innocent holders, notwithstanding there was, at the time of the subscription and issuance of the bonds, a special statute prohibiting the county court from taking stock unless the subscription was voted for by a majority of all the resident tax-payers. The issuing of the bonds raises the presumption that all preliminaries, including the election required, have been complied with, and the *bona fide* holder is not bound to look behind the question of power.

*Henderson & Shields*, for plaintiff.

*C. W. Bell* and *C. L. Dobson*, for defendant.

KREKEL, D. J. The legislature of Missouri, on the twentieth day of February, 1865, granted a charter to the Mississippi Railroad Company, to which defendant county in 1869 issued bonds in payment of a subscription of stock made thereto. This suit is brought on due and unpaid coupons of said bonds. The bonds issued are made payable to said railroad company or bearer. It appears that at the time of granting the charter and at the time of issuing the bonds there existed a special act, applicable to the defendant county, providing that whenever the county of Chariton wishes to subscribe to the capital stock of any railroad company the county court shall cause an election to be held, and if a majority of all the resident tax-payers of said county shall vote for the subscription, the county court shall subscribe. The county court is prohibited by the act from taking stock unless the subscription was voted for by a majority of all the resident tax-payers.

It is claimed that because the proceedings which led to the subscription and issuing of the bonds were not had under this special act, but under the provisions of the charter, the bonds are therefore void for the want of power in the county court to make the subscription and issue the bonds. The bonds on their face recite that they were issued under the authority conferred by the charter of the company. The question whether this special act of March 12, 1859, relating to defendant county, was in force at the time of the issuing of the bonds, I shall not stop to discuss, holding that, even if it was in force, it does not affect the legality of these bonds. The charter of the Mississippi Railroad Company granted to it the privilege to obtain county subscription, and the defendant county could avail itself of the opportunity to subscribe either under this power or the power granted by the special act, assuming that the latter was in force. It can scarcely be doubted that the legislature of Missouri had the power to except this railroad company out of any limitation which might have existed by virtue of the special act. Aside from all this, it has been held that the issuing of the bonds raises the presumption that all preliminaries, including the election required, have been complied with, and a *bona fide* holder is not bound to look beyond the question of power. *City of Lexington* v. *Butler*, 14 Wall. 283; *Flagg* v. *Palmyra*, 33 Mo. 440. There is an abundance of power, as claimed by either party, to issue bonds. The recital in the bonds that they were

y.12,no.10—54

issued under authority granted by the charter might be erroneous, yet, if the special act authorized the issuing of them, that is sufficient. The question is, did power exist? Whether the source thereof was correctly pointed out can make no difference. But it is said that the provisions of the special act define who shall vote, and that these have not been complied with. The answer is that the tribunal, the county court, was by law made the judge of such matters, and when they issued the bonds innocent holders had a right to presume that all preliminary requirements had been complied with. The objections urged against the validity of the bonds are not that there was no power to issue them, but that no power existed under the charter, because the special act limits the power there granted. The defendant county urging this objection can only do so on the assumption that the special act is in force. If so, there existed power to issue the bonds; and the same having been issued, the law will attribute the exercise of the authority to the true source in the furtherance of justice and good faith. Eight years of interest have been paid on these bonds, thus affirming their validity and curing irregularities, so far as such acts tend in that direction. The law of the case arising upon the facts is with the plaintiff, and judgment accordingly.